GRAHAM *v.* STATE.

Opinion delivered October 31, 1921.

1. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—Evidence held to sustain conviction of manufacturing intoxicating liquors.

2. INTOXICATING LIQUOR—EVIDENCE.—In a prosecution for manufacturing intoxicating liquor, testimony that the mash would make a hog drunk was admissible to prove that it was intoxicating.

3.  CRIMINAL LAW—OPINION AS EVIDENCE.—In a prosecution for manu-facturing, intoxicating liquor, the testimony of a witness as to having made a diligent search of an island, and that he did not think it possible that three men could have been hidden on it, was admissible to overcome defendant's testimony that upon pistol shot three men, presumably the guilty parties, were seen leaving the island.

4.  CRIMINAL LAW—VENUE—INSTRUCTION.—An instruction in a pros-ecution for manufacturing intoxicating liquors that if the offense was committed partly in the county of the venue and partly in an adjoining county, the court would have jurisdiction, *held* proper.

5.  INTOXICATING LIQUORS—MANUFACTURE—EVIDENCE.—Proof that de-fendant manufactured an intoxicating mash which had not been distilled will sustain a prosecution for manufacturing intox-icating liquor.

Appeal from Sebastian Circuit Court, Greenwood District; *John Brizzolara,* Judge; affirmed.

*Cravens, Oglesby & Cravens,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

SMITH, J.  Appellant was convicted in the Green-wood District of Sebastian County under an indictment which charged that he "did manufacture and was un-lawfully and feloniously interested in the manufacture of ardent, vinous, malt, spirituous, fermented, alcoholic and intoxicating liquors," and has appealed.  For the reversal of the judgment, he assigns numerous errors in the admission of testimony and errors in giving and refusing instructions.

The testimony established the fact that a still had been in successful operation on an island in the Arkan-sas River, and that the island was in Crawford County. Clawson and some other officers made a search of the island for the still, and found it.  Before crossing over on the island, they found a barrel sunk down in the ground, covered over with brush.  A tow sack was there, which had been used as a strainer, and which contained some of the mash and hops similar to that in the barrel. It does not appear through what processes the mash

had gone, but the mash had fermented, and Clawson, who testified that he was familiar with the processes of manufacturing intoxicating liquors, stated that the liquor in the mash was intoxicating. He stated that it would make a hog drunk, and exceptions were saved to the admission of that testimony.

On crossing the river the officers found, in the boiler of the still, a mash identical with that found in the hidden barrel, and the testimony shows that whiskey had been very recently distilled, as the boiler was hot. The evidence on the part of the State is to the further effect that appellant and a party of men with him were seen coming almost directly from the still; that one of them had a large milk can which gave off an odor just like that given off by the mash found in the barrel; and that appellant and those with him, as soon as they landed from boats on the Sebastian County side of the river, started at once with the milk can directly towards the barrel, and that when they got to the road which runs to the river within a short distance of the barrel and saw the tracks made by the searching party they stopped and held a consultation, after which one Jackson, a member of appellant's party, went on by near the barrel to the pump, and after pumping a few strokes stopped and looked around, after which he returned to his waiting companions, and they again, after a short consultation, went back to the river bank and sat upon a log, and when the searching party went up to where appellant's party was and informed them that the mash had been found, and that they were looking for the still, Carson, one of the appellant's companions, jumped in one of the boats and was only restrained from leaving when the constable drew his pistol.

We think this testimony sufficiently connects appellant with the crime there being committed to support the jury's verdict of guilty.

Numerous assignments of error relate to the admission of testimony in regard to the things found on the island and around the hidden barrel, and the conduct of

appellant's companions while being observed by the officers. But this testimony was all competent to show that the crime of manufacturing intoxicating liquors was being committed, and that it was an operation in which appellant and his companions were alike concerned.

Appellant accounted for the peculiar odor of the milk can he and his companions were carrying by stating that it had been used for carrying fish-bait, and his companions corroborated that statement.

No error was committed in permitting Clawson to testify that the mash would have made a hog drunk. This was but an emphatic way of stating that the mash was intoxicating. He had testified that he was familiar with the mash used in making whiskey, and that the mash found was intoxicating, and to say that it would make a hog drunk was tantamount to saying that it was highly intoxicating, a comparison which it was not improper for him to make.

Clawson was permitted to testify over appellant's objection that a diligent search of the island was made, and that he did not think it possible for three men to have been hidden on the island while the searching party were there without being discovered. The significance of this testimony is that appellant attempted to show that when a member of the searching party fired his gun twice—thus giving the signal agreed upon to other members of the searching party that the still had been found—three men were seen leaving the island, the inference to be drawn from the testimony being, of course, that these escaping men were the guilty parties. Clawson's testimony was competent to rebut this inference, and it was proper for him to state how thorough the search of the island had been.

The instructions in the case were those usually given in prosecutions of this kind, except one numbered 3, dealing with the question of venue, which reads as follows:

"If you believe from the evidence that the offense, if any, was committed partly in Sebastian County, Arkansas, and partly in Crawford County, Arkansas, or the acts or effects thereof requisite to the consummation of the offense occurred in both counties, the court tells you that this court would have jurisdiction of the offense committed, if any."

No error was committed in giving this instruction. Appellant was not indicted for manufacturing whiskey, but for manufacturing intoxicating liquor, and the testimony on the part of the State was to the effect that the mash found in Sebastian County, where the venue was laid in the indictment, was intoxicating. The subsequent process of distillation may have been necessary to improve its palatability, or to make the mash into whiskey; but if the mash was intoxicating, as Clawson stated it was, then its manufacture was unlawful, although it had not become whiskey, as the inhibition of the statute is against the manufacture of "any alcoholic, vinous, malt, spirituous, or fermented liquors, or any compound or preparation thereof commonly called tonics, bitters, or medicated liquors, within the State of Arkansas." Act No. 30, Acts 1915, p. 98.

This feature of the case is similar to the question considered in the case of *Foshee* v. *State,* 149 Ark. 559. There an instruction told the jury that when the beer or mash had been made in the process of distillation of whiskey, it will be declared an intoxicating liquor, even before it passes through the process of distillation. In condemning this instruction, we there said:

"The instruction given by the court in each case set out above was predicated upon the idea that when the liquid commonly called beer was produced in the process of the distillation of whiskey it will be judicially said that the liquor is an intoxicating liquor, even before the vapor or gas produced therefrom by the use of heat passes through a worm or coil. No such presumption can be indulged. In the case of *Lowery* v. *State,* 135

Ark. 159, this court declared, as a matter of law, that the running of the liquid through the worm or coil once had the effect of producing spirits or fermented liquor within the meaning of the statute prohibiting the distillation of spirits or fermented liquors. As to whether the liquid or beer before such treatment is intoxicating within the meaning of the statute preventing the manufacture of spirits or fermented liquor was a question for the jury. The instruction given took that question from the jury and was erroneous."

See, also, *Robertson* v. *State,* 148 Ark. 585; *Marsh* v. *State,* 146 Ark. 77; *Patterson* v. *State,* 140 Ark. 236.

The court did not assume in the instant case that the mash or beer found in Sebastian County was in fact intoxicating, and the jury passed upon that question of fact.

The court did refuse to give an instruction numbered 4, asked by appellant, which told the jury that they "could not convict the defendant unless you further find the defendant did, in Greenwood District of Sebastian County, convert said mash into an alcoholic liquor." This instruction was properly refused, because it leaves out of account the question of the intoxicating character of the mash itself, which, as appears from the case just quoted from, was a question of fact for the jury where the distillation had not taken place.

No error appears, and the judgment is affirmed.