## NEAL *v.* STATE.

### Opinion delivered June 26, 1922.

1. INTOXICATING LIQUORS—INDICTMENT—DUPLICITY.—An indictment under Acts 1921, No. 324, § 1, charging that defendant did unlawfully make mash, wort or wash, *held* to charge but one offense.

2. INTOXICATING LIQUORS—LANGUAGE OF STATUTE.—Acts 1921, No. 324, forbidding the making of mash, wort or wash "fit for" distillation of intoxicating liquors, meant that the wash was intended for use in making alcoholic liquors, and not merely a mash which is adapted to or capable of being used for that purpose.

3. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—In a prosecution for unlawfully manufacturing intoxicating liquors, evidence held to sustain a verdict of guilty.

Appeal from Lafayette Circuit Court, *George R. Haynie,* Judge; affirmed.

No brief for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

WOOD, J. The indictment on which the appellant was tried and convicted, omitting formal parts, is as follows:

"The grand jury of Lafayette County, in the name and by the authority of the State of Arkansas, accuse Walter Neal of the crime of manufacturing, making and fermenting mash, committed as follows, to-wit: The said Walter Neal, in the county and State aforesaid, on the 20th day of February, A. D. 1922, did unlawfully, wilfully and feloniously make and ferment 25 gallons of mash, wort or wash fit for and to be used in the distillation, making and manufacturing of alcoholic, vinous, malt, spirituous and fermented liquors; said Walter Neal not being a person authorized under the laws of the United States to manufacture sweet cider, vinegar, non-alcoholic beverages or spirits for other than beverage purposes," etc.

The appellant demurred to the indictment on the ground that it charged more than one offense. The court overruled the demurrer, and the appellant duly excepted to the ruling.

The testimony on behalf of the State tended to prove that the mayor and other officers of the town of Stamps, Arkansas, suspected that the appellant was engaged in violating the liquor law and made a raid upon his home on the night of August 20, 1921, with a view of discovering evidences thereof, if possible. In passing through the main room of appellant's dwelling they smelled whiskey and mash. Just on the outside of the door on a rack they found a 16-gallon keg running over with mash. They followed evidences of where the mash had been dripped along until they found where it had been poured out over the yard fence. The mash smelled like it was about ready to run. It contained chops or shorts, and had been sweetened. They found in the house a keg and a jar which had contained shorts and chops. The keg and jar were still damp, and there was a great pile of chops where appellant had emptied the keg of mash. The mash found in the jar and keg in the house was the same kind as that found poured out on the weeds. The officers had been informed that a still was buried in the yard. They found a hole in the yard under a board or plank walk. From the looks of the mash that had been poured out, and the container, there must have been 20 or 25 gallons of the mash. The officers asked the appellant how he came to have the chops there and he said that he was saving it for Brother Somebody's hogs. The appellant denied that he had poured out the chops over the back fence, which was about fifty feet from his back door. The officers found fruit jars and bottles about the size of Wine of Cardui bottles, which contained a small quantity of whiskey. This all happened in Lafayette County.

The appellant was not present when the search of his premises was made. Witnesses were positive that whiskey had been in the jars found in appellant's residence. The only whiskey found on his place was that found in the container mentioned. The hole found in his yard under the plank walk was about two feet deep and a foot or fourteen inches wide. There was testimony to the

effect that the stuff found in the jar and keg at appellant's residence was the same as that poured out over the back fence and the same kind as that found by the officers at other places where whiskey was being made. The officers didn't find any still, but the hole at the back of appellant's house looked like a still or oil can had been buried in it.

One witness testified that he had been a farmer and had fed hogs, but never fed his hogs on high-class stuff made of shorts, sugar and meal. He tasted the mash and knew that it had been sweetened with sugar. The State also introduced a certificate of the internal revenue collector to the effect that the records of his office did not show that the appellant was authorized under the laws of the United States to make and ferment mash, wort, or wash for the distillation of spirits, alcoholic, vinous, malt, spirituous and fermented liquors.

The appellant testified in his own behalf, and his testimony and the testimony of other witnesses tended to prove that he was not guilty of the crime charged. The court read to the jury sec. 1 of act 324 of the Acts of 1921, as follows: "No mash, wort, or wash fit for distillation or for the manufacture of beer, wine, distilled spirits or other alcoholic liquors shall be made or fermented by any person other than a person duly authorized under the laws of the United States to manufacture sweet cider, vinegar, non-alcoholic beverages, or spirits for other than beverage purposes."

The court also read to the jury the statute prescribing the punishment for violation of the above act, and then instructed the jury as follows: "So in this case, gentlemen, if you find from the testimony, beyond a reasonable doubt, that this defendant did make or ferment mash—any quantity thereof, as alleged in the indictment—of mash, wort or wash fit for and to be used in the distillation, making and manufacturing of alcoholic, vinous, malt, spirituous or fermented liquors, and that the defendant was not a person authorized under the laws of the United States to manufacture sweet cider, vinegar,

non-alcoholic beverages, or spirits for other than beverages, you will find him guilty and assess his punishment at imprisonment in the penitentiary for some period of time not less than one or more than five years. If you entertain a reasonable doubt growing out of the evidence, you will give him the benefit of that doubt and acquit him.''

The appellant asked the court to instruct the jury as follows: ''The jury is instructed that, before they can convict the defendant of the crime of making and fermenting mash, they must find beyond a reasonable doubt that defendant made and fermented mash fit for distillation of intoxicating liquors and that he intended same for distillation of intoxicating liquors.''

The court refused this prayer, and appellant excepted to the ruling.

1. The indictment follows the language of the statute and is sufficient. *Wolfe* v. *State,* 107 Ark. 33, and cases there cited. Webster gives the definition of ''mash'' when used in brewing and distilling as follows: ''Crushed malt, or meal of rye, wheat, corn, etc., steeped and stirred in hot water to form wort.'' ''Wort,'' says he, is ''essentially a dilute solution of sugar, which by fermenting produces alcohol and carbon dioxide;'' ''the sweet infusion of malt which ferments and forms beer; hence any similar liquid in incipient fermentation.'' ''Wash,'' he defines as ''a fermented wort from which spirit is distilled.'' It is clear therefore that the Legislature used these terms synonymously, and when they are used in an indictment in precisely the language of the statute they do not charge separate and distinct offenses, but only one offense.

2. The court did not err in its instructions. These instructions conform to the law as announced by this court in two recent cases. See *Logan* v. *State,* 150 Ark. 486, 490, 491; *Burns* v. *State, ante* p. 215. In these cases we held: ''The phrase 'fit for distillation,' contained in the statute, as meaning that the wash was intended for

use in making alcoholic liquors, and not as merely meaning a mash which is adapted to, or capable of, being used for that purpose.''

The testimony on behalf of the State was sufficient to sustain the verdict. Under the evidence the issue of guilt or innocence of the crime charged was one of fact for the jury. The record presents no error in the rulings of the trial court. The judgment is therefore affirmed.