Argued December 9, 1924, affirmed January 2, 1925.

## STATE *v.* CLARENCE BROWN.

(231 Pac. 926.)

**Intoxicating Liquors—Defendant Could be Convicted of Possession of Mash in Actual Possession of Accomplice Pursuant to Common Design to Manufacture Liquor.**

1.  Defendant could be convicted of possession of mash fit for distillation or manufacture of liquor, in violation of General Laws of 1923, page 46, Section 2, though not in actual possession thereof where accomplice, pursuant to common design to manufacture liquor, was in actual possession, the actual possession of such accomplice being in law a joint possession of all who joined with him in the execution of such design.

**Criminal Law—Each Confederate Liable for Every Act of Accomplices in Execution of Common Purpose.**

2.  Each confederate is liable for every act of his accomplices in execution of common purpose.

**Criminal Law—Each Conspirator is Agent for Others in Performance of Acts in Furtherance of Unlawful Purpose.**

3.  Where a number of persons unite and co-operate for the carrying out of a common criminal purpose, each is agent for others in the performance of all acts in the furtherance of that object.

---

2.  See 5 R. C. L. 1063.

**Criminal Law—Evidence as to Defendant's Apparatus for Manufacture of Liquor Found Near Mash Held Admissible in Prosecution for Possession of Mash.**

4. In prosecution for possession of mash fit for distillation, in violation of General Laws of 1923, page 46, Section 2, in which the evidence showed actual possession by alleged accomplice, evidence as to defendant's apparatus for manufacture of liquor found near mash though evidence as to other crime, was admissible to prove defendant's connection with unlawful possession of mash.

**Criminal Law—Evidence as to Distinct Crime Unconnected With That Charged not Admissible.**

5. Evidence as to distinct crime unconnected with that charged is not competent as evidence against accused for purpose of proving crime charged.

**Criminal Law—Evidence as to Defendant's Connection With Mash Found in Actual Possession of Accomplice Held Sufficient for Submission of Case to Jury.**

6. In prosecution for possession of mash fit for distillation or for manufacture of liquor in violation of General Laws of 1923, page 46, Section 2, in which the evidence showed that alleged accomplice and not the defendant was in actual possession of mash, evidence corroborative of testimony of accomplices tending to connect defendant with unlawful possession of mash, *held* sufficient for submission to jury of question of defendant's guilt.

**Criminal Law—Testimony of Accomplices must be Corroborated.**

7. Testimony of accomplices to warrant conviction must be corroborated by independent evidence tending to connect defendant with commission of crime, under Section 1540, Or. L.

**Criminal Law—Weight of Circumstances Relied on to Corroborate Accomplices is for Jury.**

8. The weight of circumstances relied on to corroborate testimony of accomplices, under Section 1540, Or. L., is for jury.

See (1) 33 C. J. 617.   (2, 3) 16 C. J. 128.   (4) 16 C. J. 605 (1926 Anno.).   (5) 16 C. J. 586.   (6) 16 C. J. 712.   (7) 16 C. J. 698, 701. (8) 16 C. J. 714.

From Polk: H. H. BELT, Judge.

Department 1.

Clarence Brown was charged by the grand jury of the Circuit Court of the State of Oregon for Polk

---

4. See 8 R. C. L. 199.

5. Other offenses as provable in intoxicating liquor prosecutions, see note in 18 Ann. Cas. 846. See, also, 8 R. C. L. 198.

7. Necessity for corroboration of testimony of accomplices, see notes in 71 Am. Dec. 671; 34 Am. Rep. 408; 98 Am. St. Rep. 158. See, also, 1 R. C. L. 166.

8. See 1 R. C. L. 171.

County with offending against Section 2, Chapter 30, General Laws of Oregon, 1923, reading, in part, as follows:

"No mash * * fit for distillation or for the manufacture of spirituous, malt, fermented, alcoholic, or other intoxicating liquors, shall be * * possessed within this state by any person who does not at the time hold a permit issued under the laws and regulations of the United States for the manufacture either of alcohol for denaturation or of vinegar or of beverages containing less than one half of one per cent of alcohol by volume, from intoxicating liquor or by arrested fermentation. The burden of proof shall be upon the defendant in any prosecution under this act to show the possession of such a permit."

The indictment against Brown charged him severally as follows:

"That he, the said Clarence Brown, on the 15th day of November, A. D. 1923, in the county of Polk and state of Oregon, then and there being, did then and there have in his possession about 400 gallons of mash fit for distillation of intoxicating liquors * * ."

At the trial the state supported the material allegations of its indictment by the testimony of two of Brown's alleged accomplices, Jim Hubbard and Austelle McCarter, both of whom had been convicted upon their pleas of guilty to the charge of unlawful possession of the mash described in the indictment against Brown, and by testimony offered for the purpose of corroborating the evidence of the *corpus delicti* of the offense and to connect the defendant therewith.

When the state had presented its case, the defendant requested that the court instruct the jury to return a verdict of not guilty. This motion was denied, and the jury, upon consideration of the evidence, returned a verdict of guilty. The defendant appeals, assigning

a number of errors relating to the admissibility of testimony and involving the instructions by the court.                                      AFFIRMED.

For appellant there was a brief over the name of *Messrs. Holman & Harcombe,* with oral arguments by *Mr. Glen O. Holman* and *Mr. William W. Harcombe.*

For respondent there was a brief and oral argument by *Mr. J. N. Helgerson,* District Attorney.

BROWN, J.—The defendant asserted that he could not be held responsible for the unlawful possession of the mash, and requested an instruction to the jury upholding his contention.

To hold the defendant liable to answer to the criminal law because of a violation of the statute quoted above, the unlawful action possessing the mash must have been actually or constructively his act.

1-3. The mash was not in the actual possession of the defendant, but it was in the possession of one who the testimony tends to show was acting in concert with him. According to the testimony herein, four confederates, including the defendant, joined in the execution of the common criminal enterprise of manufacturing intoxicating liquor from prunes and sugar, for the purpose of unlawful sale. The law declares that each confederate is liable for every act of his accomplices in the execution of a common purpose in violation of law. Moreover, whenever a number of persons unite and co-operate for the carrying out of a common criminal purpose, each is the agent for the others in the performance of all acts in the furtherance of that object. If the testimony be true, the crime of possession of the mash was not committed by Jim Hubbard alone, who happened to

be the occupant of the property where the mash was made and kept. His possession at the scene of the crime made a *prima facie* case against him. The mash was in Hubbard's chicken-house. However, the record discloses undisputed testimony to the effect that three other persons joined and united with him in the execution of a common design and agreement to manufacture intoxicating liquor from prunes and sugar. That liquor was to be sold to Brown at $10 per gallon, less the cost of the material supplied by him, the remainder of the proceeds to be shared equally by the four confederates.

Witnesses testified that under the common plan of co-operation Brown furnished the prunes and sugar and that Hubbard and McCarter set the mash described in the indictment and put the same in barrels furnished by Brown; that to hasten fermentation the mash was warmed by apparatus furnished by Brown; and that in pursuance of the common scheme Brown had delivered to his accomplices, on premises occupied by Jim Hubbard, where the mash was later found by the sheriff, a still and worm for the manufacture of intoxicating liquors, also a spirits hydrometer used for the purpose of testing the strength of the liquor manufactured by them.

If the testimony is true, there was a ·union of criminal intent to violate the law of the state. There was, in law, a joint possession. Hubbard's possession was likewise Brown's possession. Hubbard's guilty act, committed in advancing the joint criminal object, was likewise a guilty act upon the part of Brown and the other confederates: Or. L., § 2370, and cases there noted; 1 Bishop on Criminal Law (9 ed.), § 629; 1 Wharton's Criminal Law (11 ed.), c. 9; 1 Cyclopedia Crim. Law (Brill), § 259; 16 C. J., § 99.

From our view of the law, when applied to the

facts in the case at bar, the assignments of error relating to the court's instructions and rulings upon the matter of possession of the mash are without merit.

The defendant complains of the court's ruling in the matter of the reception in evidence of a number of articles found by the sheriff, with the mash.

4. These exhibits were competent as going to the defendant's motive. See the recent case of *State* v. *Harris*, 106 Or. 211 (211 Pac. 944). The articles of personal property found with the mash were a part of the apparatus supplied by this defendant for the purpose of advancing the common object, and tended to connect him with the unlawful possession of the mash. It was the defendant who purchased the bottle of wood alcohol and delivered it to his accomplices. It was the defendant who delivered the still and worm to his confederates at the scene of the crime. Such evidence constitutes some proof of the defendant's accomplicity in the commission of the crime charged.

5, 6. In the law of criminal evidence there is no better established rule than the rule that one distinct crime, unconnected with that charged in the indictment, is not competent as evidence against the accused for the purpose of proving the crime charged. But, in the case at issue, the evidence of the possession of the mash is so linked with the evidence of the possession of the apparatus used to ripen the same for distillation and to distill and manufacture intoxicating liquor therefrom, that this case constitutes an exception to the general rule: *State* v. *O'Donnell*, 36 Or. 222 (61 Pac. 892).

The defendant challenges the sufficiency of the evidence to connect him with the commission of the crime charged.

7. The two convicted accomplices testify fully concerning the commission of the offense and the participation of the defendant therein. Their testimony is corroborated by the testimony of Sheriff Orr and his deputy as to the *corpus delicti*. In fact, the sheriff and his deputy gave sufficient testimony from which the jury could have found that the body of the offense was established by testimony independent of that of the accomplices. But that testimony alone is insufficient to establish the guilt of the defendant. Before a conviction can be had, the testimony of the two accomplices must be corroborated by such independent evidence as tends to connect the defendant with the commission of the crime of unlawful possession of mash: Or. L., § 1540. The sheriff and his deputy testified to circumstances, when viewed in the light of other evidence, that tended to connect the defendant with the commission of the crime.

The sheriff found at the place of the crime a number of articles, hereinbefore alluded to, furnished by the defendant and used in connection with the commission of the offense. The defendant's still and worm were among those articles found with the mash. The defendant lived only a few miles distant from the place occupied by Hubbard, where the mash was kept, but he had never been to the Hubbard home until about the 1st of November, 1923, when the confederates entered upon the execution of their unlawful enterprise. Independent of that of the accomplices, there is testimony to the effect that from that time until the investigation by the sheriff, Brown made visits to the Hubbard place in the nighttime, and other visits in the daytime, for the purpose of conferring with his confederates. According to the testimony of Mrs. Hubbard, it was in the nighttime that Brown delivered the still. She knew of

Brown's visit on one particular night. Further, she knew that the still was not in the building during the day of this visit, and that it was there on the following morning. The druggist who sold the defendant a bottle of denatured alcohol labeled it with his particular label. The accomplices testified to the delivery by defendant of the bottle of alcohol at the scene of the crime, and the sheriff testified that he found it there, along with the other articles offered in evidence. There is, likewise, independent testimony to the effect that Brown delivered a spirits hydrometer called by the witnesses a "thermometer," which was used for testing the alcoholic strength of the liquid.

8. The court committed no error in denying the defendant's motion to take the case from the jury. There was sufficient evidence, if believed by the jury, to sustain a conviction. The weight of these circumstances was peculiarly a question for the jury. Defendant's association with his accomplices may, or may not, be a strong circumstance tending to show his criminality. It must necessarily rest upon the circumstances and conditions of the association: *State* v. *Townsend*, 19 Or. 213 (23 Pac. 968).

Much has been written concerning the sufficiency of corroborating testimony, yet no exact rule has been established for measuring the sufficiency thereof, beyond the mere declaration that the corroborating evidence must tend to connect the defendant with the commission of the crime. Each case must depend upon its own peculiar facts. The reports contain many cases illustrating the sufficiency or insufficiency of such evidence. But the statute is plain, and it is the writer's opinion that little is gained by an effort to make plain that which is already plain.

The language of the law of this state is concise and clear, and declares, in effect, that there must be testimony other than that of the accomplice or accomplices that tends to connect the accused with the commission of the crime. This defendant's visits to, and association with, his confederates, together with the finding of articles of personal property belonging to him, which were used by his accomplices in the commission of the crime, constitute sufficient evidence to submit the cause to the jury. The testimony tended to connect the defendant with the possession of the mash. The rule of evidence has been complied with.

This case is affirmed.                AFFIRMED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.