Argued at Pendleton October 27, affirmed December 8, rehearing denied December 15, 1925.

## ARTHUR PACK *v.* STATE ET AL.

### (241 Pac. 390.)

**Intoxicating Liquors—Complaint for Possession of Peach Mash Held to State Facts Sufficient to Constitute Prima Facie Case.**

1. Complaint under Laws of 1923, page 46, Section 2, alleging that defendant unlawfully had in his possession certain peach mash fit for distillation and for manufacture of spirituous intoxicating liquor, contrary to the statutes, *held* to state facts sufficient to constitute a *prima facie* case.

**Indictment and Information—Need not Negative Matters on Which Defendant has Burden of Proof.**

2. An indictment or complaint need state only those things necessary for prosecution to prove, and need not negative matters on which defendant has burden of proof.

**Intoxicating Liquors—Complaint for Possession of Peach Mash Need not Allege That Defendant Did not Hold Permit.**

3. Construing Section 2224—58, Or. L., together with Laws of 1923, page 46, Section 2 *held*, that complaint for possession of

peach mash, fit for distillation and manufacture of intoxicating liquor, need not allege that defendant did not hold permit for manufacture of alcohol for denaturation.

**Indictment and Information — Exceptions Descriptive of Offense in Indictment must Negative Without Reference to Position.**

4. Only such exceptions and provisos need be negatived in complaint or indictment as are descriptive of offense without reference to position of exception or proviso.

**Intoxicating Liquors — Statute Prohibiting Possession of "Mash," "Wort," and "Wash" Held Constitutional.**

5. Laws of 1923, page 46, Section 2, prohibiting possession of "mash," "wort," and "wash" fit for manufacture of liquor, *held* not unconstitutional as too extreme an exercise of police power, since intention was to prohibit possession thereof for purpose of manufacturing intoxicating liquor; "mash" being the mixed ingredients reduced to a pulp; "wort" the mash after the malt, or other active ingredient, has been added, either before or during fermentation; and "wash" the fermented wort ready for distillation.

**Intoxicating Liquors — Legislature may Prohibit Possession of Articles Intended for Use in Manufacturing Intoxicating Liquor.**

6. It is within power of legislature to prohibit manufacture of intoxicating liquor or possession of articles to be used as means thereof, such as mash, wort, wash, stills or worms used for such manufacture.

---

Criminal Law, 16 **C. J.**, p. 530, n. 65.
Indictments and Informations, 31 **C. J.**, p. 672, n. 47, p. 720, n. 57, 58, p. 722, n. 64.
Intoxicating Liquors, 33 **C. J.**, p. 507, n. 63, 67 New, p. 580, n. 20 New, p. 727, n. 22, p. 729, n. 30 New, p. 746, n. 54, p. 748, n. 65, 66, 67.
Mash, 38 **C. J.**, p. 1383, n. 17.
Statutes, 36 **Cyc.**, p. 1106, n. 29, p. 1147, n. 28, 30.
Wash, 40 **Cyc.**, p. 495, n. 28 New.
Wort, 40 **Cyc.**, p. 2864, n. 37 New.

From Wasco: FRED W. WILSON, Judge.

In Banc.

This is a proceeding by a writ of review, to review the judgment of the Justice's Court for Dalles District, Wasco County, Oregon, in the case of the State

---

4. Necessity of averment in indictment or information negativing exception in statute on which prosecution based, see notes in 6 Ann. Cas. 726; 13 Ann. Cas. 364; Ann. Cas. 1913B, 135. See, also, 14 R. C. L. 188.

116 Or.—27

of Oregon, Plaintiff, v. Arthur Pack, Defendant. Defendant entered a plea of guilty, of the crime of possession of peach mash, fit for distillation, and for the manufacture of intoxicating liquor. On motion of the district attorney, the Circuit Court quashed the writ and dismissed the proceeding. Plaintiff, Arthur Pack, appeals.        AFFIRMED.

For appellant there was a brief and oral argument by *Mr. J. W. Allen.*

For respondents there was a brief over the names of *Mr. Francis V. Galloway,* District Attorney, and *Mr. T. Leland Brown,* with an oral argument by *Mr. C. C. Proebstel.*

BEAN, J.—The assignment of error relied upon is that the Circuit Court erred in holding that the complaint filed in the Justice's Court states facts sufficient to constitute a crime. The charging part of the complaint is as follows:

"That the said defendant, Arthur Pack, on the 26th day of January, 1925, in the County of Wasco, State of Oregon, then and there being, did then and there unlawfully possess and have in his possession certain peach mash, fit for distillation, and for the manufacture of spirituous intoxicating liquor contrary to the Statutes * * *"

The complaint is based upon Chapter 30, General Laws of Oregon of 1923, Section 2, which provides thus:

"No mash, wort or wash, fit for distillation or for the manufacture of spirituous, malt, fermented, alcoholic or other intoxicating liquors, shall be made, fermented or possessed within this state by any person who does not at the time hold a permit issued under the laws and regulations of the United

States for the manufacture either of alcohol for denaturation or of vinegar or of beverages containing less than one-half of 1 per cent of alcohol by volume, from intoxicating liquor or by arrested fermentation. The burden of proof shall be upon the defendant in any prosecution under this act to show the possession of such a permit.''

It is urged in support of the writ of review that the complaint failed to charge that Pack did not at the time hold a permit issued under the laws and regulations of the United States, for the manufacture of alcohol for denaturation, described in the section of the statute quoted, and therefore the charge is insufficient.

1, 2. The complaint in question states facts sufficient to constitute a *prima facie* case. An indictment or complaint need state only those things which it is necessary for the prosecution to prove. It is not necessary to negative matters upon which the defendant has the burden of proof. It is never essential to anticipate the defense: Bishop, Crim. Procedure (2 ed.), p. 283, § 326; *State* v. *Rosasco,* 103 Or. 343, 355 (205 Pac. 290). In the latter case, Mr. Justice BROWN discussed a question in principle the same as the one in hand. As there plainly pointed out, the original prohibition law, Section 2224—58, Or. L., which is Section 3, Chapter 141, Laws of 1915, provides among other things that:

''In prosecutions of this act, whether begun by indictment, complaint or information, * * it shall not be necessary * * for the state to allege or prove that the party charged * * was not within any of the exceptions provided by this act.'' See *State* v. *London,* 99 Or. 189 (195 Pac. 344); *State* v. *Busick,* 90 Or. 466 (177 Pac. 64); *State* v. *Wilbur,* 85 Or. 565 (166 Pac. 51); *Sustar* v. *County Court of Marion County,* 101 Or. 657 (201 Pac. 445).

Mr. Justice BROWN said, as recorded at page 352 of the Report:

"The possession of intoxicating liquor was made a substantive offense by Chapter 30, General Laws of 1917, which became a part of the Prohibition Act and is to be construed with the other provisions thereof. Chapter 141, Laws of 1915, the original Prohibition Act, together with its amendments, should be construed as a whole. This section of the statute relating to pleading and proof relieves the prosecution of the necessity of averring or proving that the act charged as a crime does not come within an exception or proviso."

3. The same may be said of the act of 1923, of which we have quoted a part. This act is aimed to prevent the manufacture of intoxicating liquor and is a part of the Prohibition Act, and should be construed together with the original act and its amendments. Sections 2224—58, taken together with the last sentence of Section 2 of Chapter 30, General Laws of 1923, above quoted, which governs the matter of pleading and proof as to the question involved, renders it unnecessary for the prosecution to aver or prove that the act charged as a crime does not come within the exception. One reason for the law is that a defendant holding a permit or license from the United States authorities is in a better position to show such fact than is the prosecuting official. Neither is there danger of the law working a hardship. The rule is stated in 16 C. J., Section 998, page 530, thus:

"Where the subject matter of a negative averment in the indictment, or a fact relied upon by defendant as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowl-

edge, the general rule is that the burden of proof as to such averment or fact is on him.''

4. In the present case it would have been as convenient for defendant Pack to present such a permit, if he had one, as it was for him to enter a plea of guilty to the charge. The better rule deducible from the authorities is that only such exceptions and provisos need be negatived in a complaint or indictment as are descriptive of the offense without reference to the position of the exception or proviso: 10 Ency. Pl. & Pr. 495–497. See, also, Clark's Crim. Proc., § 98; Bishop's Crim. Prac., §§ 331–341.

The complaint, in the case in hand, informs the defendant of the nature and cause of the accusation against him. It charges him with the unlawful possession of mash fit for distillation and for the manufacture of spirituous intoxicating liquor.

As the statute directs, the burden of showing that the defendant came within the exception of the law, and holds such a permit as mentioned in the statute, devolved upon the defendant.

In *State* v. *Brown*, 113 Or. 149 (231 Pac. 926), the charging part of the indictment, upon which a conviction was upheld, reads thus:

''That he, the said Clarence Brown, on the 15th day of November A. D. 1923, in the county of Polk and State of Oregon, then and there being, did then and there have in his possession about 400 gallons of mash fit for distillation of intoxicating liquors. * * ''

Apparently, on account of the opinion in the Rosasco case, the question of the sufficiency of the indictment was passed as having been settled.

5. The defendant contends that to prohibit the possession of ''mash, wort and wash'' is too extreme an exercise of the police power, and that the statute is

unconstitutional, and advances the argument that it would prohibit the housewife from making jelly, or a cannery from making jam, or a dairyman from feeding a mixture of beet pulp to his cows.

According to Webster's Dictionary, "mash" is the mixed ingredients reduced to a pulp; "wort" is the mash after the malt, or other active ingredient, has been added, either before or during fermentation; and "wash" is fermented wort ready for distillation and the extraction of the spirituous liquor.

In ascertaining the meaning, as expressed in the language of this statute, the cardinal rule of construction to arrive at the legislative intent should be observed: Black on Interp. of Laws (2 ed), p. 45 et seq. It is clear that the purpose of the statute was to prevent the manufacture of intoxicating liquor. There is no difference in the constitutional principle between the prohibition of the sale of intoxicating liquor as a beverage and the prohibition of its manufacture, in order to stop the sale: *Schmitt v. F. W. Cook Brew. Co.*, 187 Ind. 623 (120 N. E. 19, 3 A. L. R. 270). As said in the latter case, at page 275:

"No provision of our Constitution has been pointed out which forbids the passage of laws to protect the health, morals, or welfare of the people in connection with the traffic in intoxicating liquor, even though such laws destroy previously recognized property without paying for it. That the liquor traffic is within the police power of the state no one denies. When this is admitted there must follow the power to take such steps as are reasonably suitable to carry out this purpose."

When we digest the meaning of the statute quoted above, it is plain that the lawmakers intended to prohibit the making, fermentation or possession of mash,

wort or wash, for the purpose of the manufacture of intoxicating liquor. That the statute means more than that the mash, wort, or wash, which is prohibited, is fit for distillation, or fit for the manufacture of intoxicating liquors, but that it was the intention, or the apparent intention, to be used for that purpose. When such a common-sense construction is given to the statute, there is no danger of the law interfering with the housewife in making jelly or a cannery man from making jam. The whole context of the legislative act, as well as the title thereto, shows that the prohibition contained in Section 2 of the act is aimed against the manufacture of intoxicating liquor. It was as competent for the legislature, in the exercise of the police power to prohibit the manufacture of intoxicating liquor, in its incipient stages, as it was for such prohibition of the completed product.

6. It is within the power of the legislature to prohibit the manufacture of intoxicating liquor, or the possession of the articles intended to be used as a means therefor, such as mash, wort, wash, stills or worms used for such manufacture. The meaning of the word "mash" used in the statute is better expressed in Blakemore on Prohibition (2 ed.), page 161, from which we quote the following:

"The word "mash" includes any mixture of grain or malt with water or other liquid in such manner as to show that fermentation was intended to be produced as a state in the process of manufacturing intoxicating liquors (*Blevins* v. *State,* 109 Neb. 183 (190 N. W. 489), and if mash is intoxicating, its manufacture is forbidden although the subsequent process of distillation was necessary to make it palatable. *Graham* v. *State,* 150 Ark. 363 (234 S. W. 166). * * A statute forbidding the making of mash 'fit'

for distillation of intoxicating liquors means that the mash was intended for use in making alcoholic liquors and not as merely meaning a mash which is capable of being used for that purpose (*Logan* v. *State,* 150 Ark. 486 (234 S. W. 493); *Neal* v. *State,* 154 Ark. 324 (242 S. W. 578), and hence a farmer who made a mash for feeding his stock would not be guilty. *Milliner* v. *State,* 154 Ark. 608 (243 S. W. 861).''

There was no error committed by the court in quashing the writ of review and the judgment is affirmed.                                   AFFIRMED.

Mr. Justice BROWN did not sit in this case.