Blevins v. State.

---

GEORGE BLEVINS ET AL. V. STATE OF NEBRASKA.

FILED NOVEMBER 13, 1922.   No. 22531.

1. **Intoxicating Liquors: Stills: Unlawful Possession: Proof.**
   In order to constitute the possession of a still unlawful under

section 3252, Comp. St. 1922, it must be established that the still was intended to be used for the manufacture of intoxicating liquor, without permission being given as required by the statute.

2. ———: ———: ———. The possession of a still for legitimate purposes, such as the manufacture of distilled water, or other innocuous liquids, is not a crime under said section.

3. ———: "MASH." Considering the purpose and intention of the law, the word "mash" in section 3252, Comp. St. 1922, is held to include any mixture of grain or malt with water or other liquid in such a manner as to evidence that fermentation was intended to be produced as a stage in the process of manufacturing intoxicating liquor.

4. ———: ———: POSSESSION: PRESUMPTION. By the provisions of section 3273, Comp. St. 1922, the possession of mash except under permit, as by law required, is presumptive evidence of the manufacture of intoxicating liquors in violation of the act, unless the person having the same in possession "satisfactorily account for and explain the possession thereof, and that it was not kept for an unlawful purpose."

ERROR to the district court for Gosper county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*W. D. Oldham, John H. Lindermann* and *E. T. Grunden,* for plaintiffs in error.

*Clarence A. Davis, Attorney General,* and *C. L. Dort,* contra.

Heard before ALDRICH, DAY, LETTON and ROSE, JJ., REDICK and SHEPHERD, District Judges.

LETTON, J.

The accused were jointly charged in an information with two counts: The first charging that they unlawfully had possession of a still or part thereof and other equipment for making intoxicating liquor, and having in their possession mash and other material being used for the purpose of manufacturing intoxicating liquor; the second count charged them with the unlawful manufacture of intoxicating liquors. They were found guilty upon each count.

A number of errors are assigned  We have examined and considered them, but find it unnecessary to discuss the points raised, since we are convinced that no prejudicial error occurred in the admission of exhibits, or in the giving or refusing of instructions.  The assignment that the verdict is not sustained by sufficient evidence, however, is more serious.  The evidence shows that a deputy sheriff, armed with a search warrant, in company with two officers, in their absence visited the home of the defendants, which was upon a farm belonging to one Robb. The dwelling was somewhat remote from a main road.  In the pantry they found a 100-pound sack of sugar partly used, and in a tall patch of sunflowers near the house found a 40-gallon jar with about 2 bushels of grain, either rye or wheat, soaking in water.  This jar had a wooden cover and was covered with a fur coat.  Near this they found a beer keg with some fluid in it of the same nature as that in the jar.  In a lean-to, or shed, at the back of the house, they found a galvanized iron can with a copper coil fastened to it.  They also found in the cellar three cases of empty beer bottles and a number of empty beer and whiskey bottles, and by the side of the yard fence they found 35 or 40 empty beer or whiskey bottles.  They also found a bottle with a small quantity of whiskey in it in an automobile near the house.

About a week afterwards defendants were arrested while putting up hay about four or five miles from the house  In explanation of these facts, defendant Homer Blevins testified that he had been living upon the Robb place for five years; that his brother George had been living with him ever since he returned from the war; that while George was in the army his brother Arthur and his wife lived with him; that Arthur's wife was stricken with paralysis and was ill with it for about a year before she died; that during her illness Dr. Teeters directed his brother to get a coil (evidently meaning a still) for the purpose of making distilled water for her; that this was the coil taken by the officers and was the only one about

the place to his knowledge; that after she died the coil was thrown into the lean-to, which was used as a rubbish or junk room, and had never been used for any purpose since that time. It may be noted that one of the state's witnesses testified that the can and coil, or still, was full of mud and water. Blevins also testified that about two weeks before the search was made defendants had left their home to work upon one of Mr. Robb's other farms, and upon an island owned by Robb where they were arrested; that when they left the house the large jar was in the junk room at the back of the house, where it had been kept; that it had been used only to salt meat in. He denied making any mash or distilling any liquor of any kind, and denied that he had ever had a fur coat. The testimony of his brother George was substantially to the same effect. Dr. Teeters testified that he had recommended that Mrs. Blevins be given distilled water to drink, and that a still had been procured for her, but he did not identify the still in evidence as being the one he had ordered. Several witnesses testified to the previous good character of the defendants.

It is undisputed that a still was found in the shed, or lean-to, attached to the house. The shed was used for a storeroom for junk and rubbish, and had an opening for a window, with no sash in it. The statute (Comp St. 1922, sec. 3252) declares it shall be unlawful for any person to "have possession of any still, or equipment for the manufacture of alcohol or whiskey or of any mash or intoxicating liquor." If it be held that the word "still" in the statute is not qualified by the words "for the manufacture of alcohol or whiskey" in the succeeding clause of the sentence, then the conviction on the charge of the possession of a still in the first count must stand; but it is a well-known fact of which the court will take judicial notice that distilled water is used in medicinal and chemical preparations, also in the electrical and automobile industries, and that it is prescribed as a remedial beverage in certain diseases. The purpose of the statute was to pro-

hibit and prevent the manufacture and sale of intoxicating liquor, and it seems apparent that it was never intended to prohibit the process of distillation for other and lawful purposes. To so hold would interfere with legitimate industry to such an extent that we cannot conceive that the legislature had such an intention. We will not so interpret the statute, and must hold that the statute should be construed as if it read "or have possession of any still or equipment for the manufacture of alcohol or whiskey."

It may be observed that in the next sentence in the statute, which contains the penal clause, there is no comma directly following the word "still." We are convinced therefore that, in order to warrant the conviction for the possession of a still, it must be charged and proved that the purpose of its possession was the manufacture of intoxicating liquor. The testimony of an apparently unbiased witness is that a still had been purchased and brought upon the place for a lawful purpose. The still which was found was not in use, and so far as the evidence showed had not been in use for the manufacture of intoxicating liquor, one of the state's own witnesses testifying that it was full of mud and water. We conclude that the charge so far as based upon the unlawful possession of a still is not sustained by the evidence.

The conviction upon the first count may be sustained upon the charge that defendants had in their possession mash and other material used for making intoxicating liquors. There is no proof that any one else had inhabited their house during their absence. It was admitted that the 40-gallon jar belonged to them, and the "mash" which was in it was evidently in process of fermentation, having "an odor like cider." We have no sample of the mash before us, but the jury saw it, smelled the contents of the jar, and became satisfied that it was to be used for the purpose of manufacturing intoxicating liquor.

It is argued that "mash" is defined in Webster's Unabridged Dictionary as "crushed malt, or meal of wheat, rye, corn, etc., steeped and stirred in hot water to form

wort," and that the court erred in refusing to give the jury an instruction reciting this definition. No equally authoritative definition is found in the Standard Dictionary: "*Mash*. 1. A mass of something beaten into a soft state, or mixed in water so as to soften. * * * 2. *Brewing*. Crushed or ground grain or malt, or a mixture of such infused to produce wort."

While the soft mass in the jar may not answer the requirements of the technical definition according to the most approved methods of the art of brewing or distilling, we are satisfied, when we consider the purpose of the law, that the legislature evidently had in mind any mixture of grain or malt with water or other liquid in such a manner as to evidence that fermentation was produced or intended to be produced as a stage in the process of the manufacture of intoxicants. The evidence on this charge is sufficient to sustain a conviction on the first count.

The second count charges the unlawful manufacture of intoxicating liquors. Section 3273, Comp. St. 1922, after providing for the issuance of search warrants, and the disposal of any articles or materials for the manufacture of intoxicating liquors found upon the premises by the officers holding warrants, provides, further: "The possession by any person of any intoxicating liquors, still, mash, preparation or equipment for manufacturing same, except under permit as in this act authorized, shall be presumptive evidence of the manufacture, keeping for sale, selling, use or disposal of such liquors in violation of this act, unless after examination he shall satisfactorily account for and explain the possession thereof, and that it was not kept for an unlawful purpose."

Defendants failed to account for and explain the possession of the mash or to show that it was not kept for an unlawful purpose to the satisfaction of the jury. The evidence taken as a whole is sufficient to sustain the verdict.

AFFIRMED.