Sommers v. State.

---

GEORGE SOMMERS ET AL. V. STATE OF NEBRASKA.

FILED JUNE 24, 1924.      No. 23795.

1. **Intoxicating Liquors:** CONSTRUCTION OF STATUTE. Section 3238, Comp. St. 1922, making it unlawful for any person to manufacture or sell intoxicating liquors, except for certain purposes and by persons specially authorized, does not prohibit the *bona fide* manufacture and sale of vinegar, even though alcohol may be developed in the process of manufacturing the vinegar.

2. ———: "MASH." The word "mash," as used in the prohibitory statute, includes any mixtures of grain, either whole, cracked or crushed, or malt, mixed with water or other liquid so as to produce fermentation.

3. ———: ———. A mixture of 10 gallons of water and sugar with one pound of yeast is not mash, within the meaning of the prohibitory statute.

4. **Evidence** examined, and *held* insufficient to sustain the verdict.

ERROR to the district court for Fillmore county: RALPH D. BROWN, JUDGE. *Reversed.*

*Waring & Waring,* for plaintiffs in error.

*O. S. Spillman, Attorney General,* and *Lee Basye, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., and REDICK, District Judge.

GOOD, J.

Plaintiffs in error (hereinafter referred to as defendants), who are husband and wife, were prosecuted on an information, consisting of three counts, charging viola-

tions of the liquor law.  Before the case was submitted to the jury, the prosecution was dismissed as to the first count. The second count charged both defendants with the unlawful manufacture of intoxicating liquors; the third count charged both defendants with the unlawful possession of mash and intoxicating liquors.  The trial resulted in finding defendant Ruby Sommers guilty on the second count, and defendant George Sommers guilty on the third count. George Sommers was acquitted on the second count and Ruby Sommers was acquitted on the third count.  Defendants prosecute error to review the record of their conviction.

Defendants urge the insufficiency of the evidence to sustain a verdict of guilty as to either defendant.  It appears that the sheriff and his deputy, armed with a search warrant, went to the home of defendants on their farm in Fillmore county, where they found defendant Mrs. Sommers, to whom the search warrant was read.  She readily assented to a search of the premises.  The officers made a thorough search, including every part of the home and the outbuildings.  In a room adjacent to the kitchen was found a keg, containing 10 gallons of water and sugar mixed with one pound of yeast, and over the top of which was spread a white cloth.  On being asked what it contained, Mrs. Sommers replied that she was making vinegar and that the contents would be vinegar when the process was completed.  She further told the officers that the contents consisted of water, sugar and yeast, to which she would later add sorghum molasses and mother of vinegar.  The contents was then in a state of fermentation.  On request of the sheriff, Mrs. Sommers furnished a bottle so that the officers might take a sample of the liquid, which was later submitted to a physician for examination.  He testified that he distilled some of the liquid and that it contained 3½ per cent. by volume of alcohol.  No other intoxicating liquor of any kind, or any still, apparatus or equipment for the manufacture of intoxicating liquor was found.  On the following day the officers returned to the home of defend-

ants and arrested them. At that time the keg had been re-
moved from the room and the contents emptied. The de-
fendants were both put upon trial in the county court on a
complaint charging unlawful possession of intoxicating liq-
uor and were found not guilty. Then followed the pres-
ent prosecution, which is based upon the manufacture and
possession of the same intoxicating liquor, for possession
of which defendants were tried in the county court.

Mrs. Sommers testified that she was making vinegar and
following a recipe furnished by her mother, and was cor-
roborated by the testimony of her mother, to the effect that
she had furnished the recipe to her daughter, and further
that the mother had used the recipe for making vinegar for
her own use for a great many years. The evidence shows
that defendants had never manufactured, sold or possessed
any intoxicating liquor. It further appears that a day or
two prior to the day on which the search was made by the
officers Mrs. Sommers had stated to a visitor at her home
that she was going to make vinegar, and she told a caller
at her house that morning that she was making vinegar
and showed her the keg in which the ingredients had been
placed to ferment. No bottles, jugs or other containers for
intoxicating liquor were found, and, for aught that ap-
pears in the evidence, defendants were honest, upright,
respectable citizens, of integrity, without any just reason
to suspect them of wrong-doing or misconduct. They had
lived in the county for ten years and on the same farm for
a period of six years. A recognized process of making vine-
gar is that employed by Mrs. Sommers, and apparently is
one in common use.

Our liquor statute recognizes that it is lawful for a citi-
zen to manufacture vinegar. Section 3238, Comp. St. 1922,
after declaring that it shall be unlawful to manufacture,
sell or keep for sale intoxicating liquors, further provides:
"And nothing herein contained shall be construed to pre-
vent the *bona fide* manufacture and sale of vinegar." The
placing of this provision in the statute clearly recognizes
that alcohol may be developed in the process of manufac-

turing vinegar. It is well known that if sweet cider is permitted to stand, exposed to the air, it will develop alcohol and become hard cider, which is an intoxicating liquor, but if allowed to stand a sufficient time acetic acid develops and it becomes vinegar. And so, where sugar or molasses and water and yeast are mixed together, fermentation will develop alcohol, but by the addition of mother of vinegar acetic acid is developed and the mixture will become vinegar. Evidently it was not the intention of the legislature to make it unlawful to manufacture vinegar, even though in the process alcohol is developed. The question arises whether or not there is a good-faith purpose and intention to make vinegar. If such is the intention and the purpose, then the law has not been violated. In the present case, it was disclosed that the defendant, Mrs. Sommers, had arranged with her mother, who lived in the vicinity, to obtain mother of vinegar for the purpose of completing the process which she had started. This evidence is not disputed. Nowhere in the record is there an incriminating circumstance that is pointed out, unless it is the fact that after the premises were searched the defendants emptied the contents of the keg. This could not have availed them anything, however, because Mrs. Sommers had voluntarily furnished the officers with a sample of the liquid, which had been taken by them, and it may well be that the defendants, after finding themselves under suspicion of manufacturing liquor, concluded to empty the contents on the ground and buy their vinegar, rather than be subjected to suspicion of violating the law.

In view of the circumstances disclosed by the record, we are of the opinion that the evidence is wholly insufficient to warrant a verdict of guilty.

Complaint is made of the eleventh instruction, which defines the word "mash," as used in our prohibitory law, as "Any mixture of ingredients in water or other liquid so as to soften and in such a manner as to evidence that fermentation has been produced, or is intended to be produced as a stage in the process of manufacturing intoxicating liquor." The word "mash" has different significan-

ces, depending on the connection in which it is used. It is sometimes applied to a mixture of bran and water or turnips and bran, used for feeding live stock, but when used with reference to the manufacture of intoxicating liquors, as in brewing and distilling, it has a different meaning. Century Dictionary defines it as a "mixture of ground grain, malted or otherwise prepared, and water." Webster's New International Dictionary defines it as "crushed malt, or meal of rye, wheat, corn, etc., steeped and stirred in hot water to form wort." The Encyclopædic Dictionary defines it as "crushed or ground grain, malt, or a mixture of the two, steeped in hot water so as to obtain an infusion consisting of the saccharine portions." It is clear that not every mixture of ingredients with water which will produce fermentation is mash.

We are inclined to the view that, as used in our statute, the word "mash" would include any mixture of grain, either whole, cracked or crushed, or malt, mixed with water or other liquid so as to produce fermentation. We think the definition as given in the instruction is entirely too broad. The mixture of ingredients in possession of defendants, consisting of water, sugar and yeast, was not mash, within the meaning of our prohibitory law. The instruction practically told the jury that the mixture was mash. This was prejudicial error.

Because of the errors pointed out, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Intoxicating Liquors, 33 C. J. p. 577, sec. 194; p. 578, sec. 195; p. 757, sec. 502; p. 761, sec. 505.