# Richmond.

## JOSEPH GRAYSON v. COMMONWEALTH.

January 20, 1927.

1. INTOXICATING LIQUOR—*Possession of Mash—Mash not Intoxicating or Connected with a Still—Case at Bar.*—The instant case was an indictment under section 20 of the prohibition act (Code of 1914, section 4675 [20]) for the possession of mash capable of being used in the manufacture of ardent spirits.

   *Held:* That section 20 of the prohibition act was intended to make the possession of mash or other substances capable of being used in the manufacture of ardent spirits, a substantive offense, independent of whether it is intoxicating in fact or whether it contains more than one half of one per cent of alcohol by volume, or whether found and siezed in connection with a still.

2. INTOXICATING LIQUOR—*Prohibition Act—Construction—Read as a Whole—Liberal Construction.*—The prohibition act must be read as a whole. The evils sought to be remedied must be considered, and, unlike most legislation creating statutory crimes, must be liberally construed.

3. WORDS AND PHRASES—*Mash—Intoxicating Liquors.*—The word "mash" has a well known judicial meaning when used in connection with the manufacture of ardent spirits.

4. INTOXICATING LIQUORS—*Punishment—Section 6 of the Prohibition Act.*—Section 6 of the prohibition act (Code of 1924, section 4675 [6]) is intended to provide punishment for everything declared by the act to be a crime, that is unlawful.

Error to a judgment of the Circuit Court of Stafford county.

*Affirmed.*

The opinion states the case.

*C. O'Conor Goolrick,* for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile*

and *Lewis H. Machen, Assistant Attorneys General,* for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

On the 10th day of May, 1926, Joseph Grayson was convicted in the Circuit Court of Stafford county upon the first count of an indictment charging the "unlawful possession of mash, capable of being used in the manufacture of ardent spirits," and sentenced to pay a fine of $50.00 and to confinement in jail for one month.

The case was tried by the court without the intervention of a jury and the judgment complained of rendered upon the following agreed statement of facts: "It is agreed that Federal prohibition agents found under the front porch of the residence of the accused, in Stafford county, Virginia, a barrel containing mash, capable of being used in the manufacture of ardent spirits, same being found within one year next prior to the finding of the indictment against the accused."

[1] The writ of error duly granted defendant from the judgment of the trial court raises, for decision by this court, the single question as to whether section 20 of the prohibition statute (Laws 1924, c. 407), under which the defendant was indicted, was intended to make the possession of "mash or other substances capable of being used in the manufacture of ardent spirits," a substantive offense, independent of whether it is intoxicating in fact or whether it contains more than one-half of one per cent of alcohol by volume.

The question at issue was raised in the trial court by a demurrer to the indictment and by a motion to set aside the verdict as contrary to the law and the evidence.

There were two grounds of demurrer: First, that the indictment failed to allege that the mash was intoxicating or that it contained more than one-half of one per cent of alcohol by volume; and, second, that it did not allege that the mash was used or possessed in connection with the operation of a still by the accused.

So far as the first ground of demurrer is concerned it may be ignored for the reason that the indictment is not drawn under that section of the prohibition act defining ardent spirits and prohibiting its possession, and if the possession of mash capable of being used in the manufacture of ardent spirits, independently of its alcoholic content, is not made a substantive offense by the statute, as is claimed, then the demurrer must be sustained. This is the precise and only question raised by the second ground of demurrer and by the motion to set aside the verdict. The agreed statement of facts supports *in toto* the charge in the indictment.

In order to arrive at a conclusion it is necessary to construe the first paragraph of section 20 of the prohibition act under which the charge against the defendant was preferred. That paragraph is as follows:

"*Requiring stills to be registered and declaring all unregistered stills contraband; proceedings upon seizure, providing for the registration of certain stills and issuance of a permit from the commissioner; offenses and presumptions.*—It shall be unlawful for any person to own or to have in his possession, without a permit as provided by this section, any still, still cap, worm, tub, fermenter, or any of them or any other appliances connected with a still and used, or mash or other substances capable of being used, in the manufacture of ardent spirits, unless such owner shall be registered with the commissioner and obtain from him a permit to

own such still, which permit shall be kept conspiciously posted at the place where such still is located. All stills in this State not registered under a permit as herein required and all mash or other products used in the operation of such a still are hereby declared contraband and shall be subject to seizure by any officer charged with the enforcement of the law, which officer shall destroy all mash and other like products found at such still and used in the operation thereof and shall forthwith notify the commissioner and turn over to him all stills, caps, worms, tubs, fermenters and other appliances to be disposed of as required by this act.''

The learned counsel for the defendant below contends that this section of the prohibition act was intended to cover the unlawful possession of stills and appliances connected therewith and only applies to ''mash or other substances capable of being used in the manufacture of ardent spirits,'' where found and seized with a still.

He relies on the language used in the heading to section 20 as well as that of the first paragraph itself to sustain his contention, and much force is given to that portion of the paragraph which declares that ''all stills in this State not registered under a permit as herein required, and all mash or other products used in the operation of such a still are hereby declared contraband and shall be subject to seizure.''

It is urged that the prohibition act makes no provision for the destruction of mash and it is not declared to be contraband except when found or used and seized in connection with a still.

The contention is then made that the General Assembly did not intend to make unlawful the mere possession of mash, with such potentialities, but simply intended to make contraband such mash when found

in conjunction with a still or its appliances. The conclusion reached is that inasmuch as the indictment fails to charge and the agreed facts fail to show that the mash was intoxicating or that it contained more than one-half of one per cent of alcohol by volume, the defendant cannot be punished for the mere possession · of the mash.

[2] According to this construction the declaration of the statute that "it shall be unlawful to own or have in his possession  *  *  mash  *  *  capable of being used in the manufacture of ardent spirits," means no more than that if it be found in connection with a still, it shall be declared contraband and destroyed, and the only crime created by the statute is the unlawful possession of a still. There are some features of the statute, all of which have been pointed out, which, under strict rules of construction, might justify this conclusion, but we do not think this was the intention of the legislature. The prohibition act must be read as a whole. The evils sought to be remedied must be considered, and, unlike most legislation creating statutory crimes, must be liberally construed.

Section 99 of the act declares: "This entire act shall be deemed an exercise of the police power of the State for the protection of the State; for the protection of the public health, peace and morals, and the prevention of the sale and use of ardent spirits, and all of its provisions shall be liberally construed to affect these objects, provided that no person shall be prosecuted for an offense for which he has been tried in any other court, or is being prosecuted therefor at the time of the institution of the proceedings under this act."

Read in the light of this section and of the evil which the legislature was seeking to remedy, there can be little doubt but that it was matching its ingenuity in legislation against the cunning of a large criminal

element whose dark and devious ways, in times past, had taught the unwisdom of leaving any loop hole of escape. The statute is designed, and should be construed, to make the way of the transgressor hard. The construction sought to be placed upon it by the defendant would not attain this end.

[3] The word "mash" has a well known judicial meaning when used in connection with the manufacture of ardent spirits. *Sommers* v. *State*, 112 Neb. 311, 199 N. W. 549; *Blevins* v. *State*, 109 Neb. 183, 190 N. W. 489; *Pack* v. *State*, 116 Ore. 416, 241 Pac. 390.

A small quantity of slops—mash, if we use the non-technical term—near a hog pen would have no significance, but the finding of "mash," especially a large quantity, in an unusual place would indicate that the owner was engaged in, or connected with, the manufacture of ardent spirits. If the construction urged here be given to the statute, all the illicit manufacturer of ardent spirits would have to do to prevent the seizure and destruction of his mash and his own arrest for the possession of it, would be to keep his mash and his still or his accomplice's still separated to that extent that the mash could not be said to have been "found in conjunction with a still." The bare stating of the proposition suggests the possibilities such a construction opens up, of evasion of the object sought by the enactment of the prohibition law, of the opportunities to shield violators from punishment, and of the defeat of the spirit of the law.

The legislature was in full possession and knowledge of all these things, and while the paragraph under construction might have been clearer, there is no doubt that it intended to denounce as crimes everything it declared unlawful in the paragraph, that is, it denounces as a crime the unlawful ownership or possession of

a still without a permit, etc. It denounces as a crime
the ownership or possession of any still, cap, worm,
tub, fermenter, or any of them. It denounces as a
crime the ownership or possession of any other appli-
ances connected with a still and used in the manu-
facture of ardent spirits, and it denounces as a crime
the ownership or possession of mash or other substances
*capable* of being used in the manufacture of ardent
spirits.

[4] Section 6 of the prohibition act is intended to
provide punishment for everything declared by the act
to be a crime, that is unlawful. It declares in part:
"Any person who shall violate *any* of the provisions of
this act shall, except as otherwise herein provided, be
deemed guilty of a misdemeanor    *    *    *."

If we take the particular clause out of its immediate
setting, which counsel attach so much importance to,
and in view of the objects of the entire act we are
justified in doing so, the legislative intent is very
clear.

In *Pack* v. *State, supra,* the Supreme Court of
Oregon, under an indictment charging that accused
unlawfully had in his possession "certain peach mash
fit for distillation and for manufacture of spirituous
intoxicating liquor," held that the indictment charged
a crime within the meaning of a section of the prohibi-
tion law which declared "no mash    *    *    *    fit for
distillation or for the manufacture of spirituous, etc.,
or other intoxicating liquors shall be made, fermented
or possessed within this State by any person."

We do not know whether this provision of the Oregon
statute stands alone or whether it is involved with
other provisions which may be invoked to throw doubt
upon its meaning, but the act and the decision in that
case, construing it, show the necessity, in order to

accomplish the object of prohibition legislation, of prohibiting the ownership and possession, whether collectively or separately, of all the means and instrumentalities employed in the violation of the law.

Of course, as in the commission all crime, intent is an element which is part and parcel of it. The proof of intent, which is accomplished by direct or circumstantial evidence, can generally be left to the jury or judge trying the case, and certainly, one who has a mixture which is admitted to be capable of being used in the manufacture of ardent spirits under his front porch, cannot complain that the court who tried him concluded that his intention was to convert the mash into ardent spirits:

We are of opinion to affirm the judgment of the circuit court.

*Affirmed.*