CONRAD KUXHAUS V. STATE OF NEBRASKA.

FILED OCTOBER 19, 1928. No. 26494.

*Morrow & Morrow,* for plaintiff in error.

O. S. Spillman, *Attorney General,* and *Lloyd Dort, contra.*

Heard before Goss, C. J., Rose, Good, Thompson and Eberly, JJ., and Redick, District Judge.

Good, J.

Conrad Kuxhaus, hereinafter referred to as defendant, prosecutes error, to review his conviction of the offense of having in his possession mash, in a state of fermentation, being used in the manufacture of intoxicating liquors, and for possession of equipment for the manufacture of such liquors.

From the record it appears that, in the performance of his duty, the sheriff of the county visited the home of the defendant for the purpose of serving a notice upon him. On knocking, he was invited into the home. While there, he observed the odor of fermenting grain and observed near the stove a 20-gallon jar covered with a blanket. He made inquiry as to what was contained therein, removed the cover and discovered 10 to 15 gallons of rye, some orange peel, lemon peel, and other ingredients, in a state of fermentation. By consent of the person in the house, he obtained a pail or jar and took a sample of the mixture. Later he examined the out-buildings, and found a pressure

cooker in a coal house, some 25 feet distant from the kitchen. Attached to the pressure cooker, in the place of the steam whistle or poppet valve, was a hollow metal elbow, which was screwed into the top of the cooker; the other end of the elbow threaded, so that, by means of a coupling, a coil could be readily attached thereto. The defendant was not in his home at the time. So far as appears, the sheriff, without protest from those in the house, took the sample and the pressure cooker, and later arrested the defendant. The sample of the mixture, taken from the jar, and the pressure cooker, with the elbow attachment, were received in evidence over objection by defendant that they were not competent because obtained by an unlawful search and seizure, and in violation of state and federal constitutional provisions.

We doubt very seriously whether the circumstances under which the sheriff obtained possession of the exhibits in question are sufficient to show that they were obtained in an unlawful manner. It appears that the sheriff was in the home of the defendant on a lawful mission, and, while in the home, saw and observed the fermenting mixture. There was sufficient to indicate to the sheriff that the mixture was being prepared and used in the process of manufacturing intoxicating liquors. Under such circumstances, we think it was not an unlawful act for him to take possession of and preserve the mixture, to be used as evidence. Suppose that while on a lawful mission he had entered the defendant's house, without force and by invitation of those present in the house, and had found the defendant in the commission of any other crime, would it be contended that it was not the sheriff's duty to arrest the defendant? And if, at the time, the defendant was in possession of deadly weapons, or other articles, which he was using in the commission of the crime, could it be seriously questioned that it was the duty of the officer to take possession of such articles and preserve them for introduction in evidence? We scarcely think so. But, whether the exhibits in question were obtained

by unlawful means, is wholly immaterial under repeated decisions of this court.

The admissibility of evidence so procured has frequently arisen in this jurisdiction. In *Billings v. State,* 109 Neb. 596, the authorities were reviewed, and it was there held: "Where articles or information are offered in evidence, which are pertinent to the issue, the court will not exclude them because they have been obtained in an irregular or illegal manner." The rule there announced has been followed in *Bush v. State,* 112 Neb. 384, and *Walker v. State,* 113 Neb. 19. While it may be conceded that the rule is different in the federal courts and in a number of the state jurisdictions, we do not feel at liberty to depart from the rule so long established in this jurisdiction.

Defendant contends that the evidence is insufficient to support the verdict, even if the exhibits were properly received in evidence. It is argued that the sheriff was not competent to testify that the mixture of rye, water and other ingredients in the jar was mash. The record discloses that the sheriff was, and for a number of years had been, familiar with mash. It was sufficient to qualify him to testify. In any event, the defendant, when on the stand as a witness in his own behalf, testified that the jar contained rye, water and other ingredients; that the rye had been soaking for three weeks or longer, was sour and smelled. From this, any intelligent person would properly infer that fermentation had begun.

In *Blevins v. State,* 109 Neb. 183, it was held: "Considering the purpose and intention of the law, the word 'mash' in section 3252, Comp. St. 1922, is held to include any mixture of grain or malt with water or other liquid in such a manner as to evidence that fermentation was intended to be produced as a stage in the process of manufacturing intoxicating liquor." In *Sommers v. State,* 112 Neb. 311, it was held: "The word 'mash,' as used in the prohibitory statute, includes any mixtures of grain, either whole, cracked or crushed, or malt, mixed with water or other liquid so as to produce fermentation." Under the

rule thus established in this court, the evidence of defend-ant alone was sufficient to show that the mixture in the jar was "mash," within the meaning of the prohibitory statute.

It is further urged by the defendant that, even if the mixture was mash, the evidence was insufficient to show that it was in defendant's possession for the purpose of manufacturing intoxicating liquor. From the record it appears, by defendant's own testimony, that the mixture had been kept in the house, near the stove, for a period of three weeks or longer; that he claimed it was intended for hog feed and that he had been feeding his hogs therefrom daily for a period of three weeks or more; yet the evi-dence shows that the jar was two-thirds, possibly three-fourths, full at the time of the sheriff's visit. It is quite evident that if intended for hog feed and defendant had been feeding his hogs from it for three weeks, he must have been using it in very small quantities. Moreover, the sheriff testified that there was either sugar or molasses in the mixture, and, when defendant was interrogated on the witness-stand as to whether there was any sugar there-in, he gave an evasive answer, saying that he could not afford to buy sugar for the hogs, but he did not deny that there was sugar or molasses in the mixture.

It is further contended that the pressure cooker was not a still or a part of a still. The pressure cooker was, in fact, an aluminum vessel, with clamps with which to screw down the lid, so as to be air-tight. The vessel had a capacity of eight or ten quarts. In the lid were three openings, into one of which was fitted a pressure gauge, which would show the amount of steam pressure. In the second hole was a pet cock, evidently for the purpose of letting out the steam before removing the lid. The third was ordinarily fitted with a poppet valve so that when the steam pressure became too strong the poppet valve would open and allow part of the steam to escape. The poppet valve had been removed and in its place was an elbow, threaded at each of its openings, one of which would

screw into the opening in the lid of the cooker, and the other threaded so that, by means of a coupling, a coil could be readily attached thereto. No other part of the cooker was produced, nor was there any indication that the elbow was used for any part of the implement as a pressure cooker. The explanation given by defendant was that, when using the cooker for preserving fruits, they placed the elbow in the opening so as to allow the steam to escape; but removing the poppet valve would allow the steam to escape as readily. In any event, it would not appear necessary, if an elbow were used, that both ends should be threaded. Another significant thing, which no doubt attracted the jury's attention, is that, while the elbow, poppet valve and the pet cock were all of brass, there was a distinct difference in the finish of the elbow and that of the poppet valve and pet cock, which were regular parts of the pressure cooker. This would lead to the inference that the elbow was not a part of the original equipment of the cooker. Another significant thing was the location of the cooker. Ordinarily, it would be kept in the kitchen; it was found in the coal shed, 25 feet distant therefrom, and covered over with some sort of a cover. Defendant said it was to keep the coal dust out, but no doubt the jury drew the conclusion that it was kept in the coal house and separated from the mash so that suspicion would be diverted. Under the circumstances indicated, we are of the opinion that the evidence was sufficient to warrant the jury in finding that the defendant had in his possession mash and a part of the necessary equipment for manufacturing intoxicating liquor.

Defendant urges that, unless the evidence warrants the finding that the mash was being used in the process of manufacturing intoxicating liquor, it will not support a conviction under section 3252, Comp. St. 1922, on which the prosecution was founded. That part of the section, applicable to the case before us, is as follows: "Any person who shall manufacture intoxicating liquor in violation of this chapter or who shall have possession of any still or

any part thereof or of any other equipment for making intoxicating liquor or who shall have in his possession any mash or other material being used in the process of manufacturing intoxicating liquor, * * * shall, upon conviction," etc.

As we have indicated, the evidence was sufficient to justify the jury in finding that the mash was in the possession of defendant for the purpose of manufacturing intoxicating liquor. In fact, the fermentation was one part of the process of the manufacture.

Counsel for defendant argue that it is necessary to a conviction under the present statute that intoxicating liquor shall have been completely manufactured. The only requirement of the statute to complete the offense is that defendant have in his possession mash that is being used in the *process of manufacturing* intoxicating liquor. It is not essential that the process shall have been completed.

Defendant complains of the failure of the court to give certain requested instructions. We have examined the charge given by the court and find that every essential element of the offense was covered by the instructions given by the court on its own motion, and that no error was committed in refusing to give those requested.

The record is free from prejudicial error. The judgment is therefore

AFFIRMED.